IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 3:23-CR-119-JGC |
| Plaintiff, | JUDGE JAMES G. CARR |
| vs. | MAGISTRATE JUDGE DARRELL A. CLAY |
| PEDRO ANDRES ARNODO-MERCADO | **MEMORANDUM OF OPINION** |
| Defendant. | |

### INTRODUCTION

On March 22, 2023, I issued an oral ruling that Defendant Pedro Andres Arnodo-Mercado be released from custody on a combination of conditions. This Memorandum of Opinion recaps the reasoning underlying my decision.

### BACKGROUND

On February 9, 2023, Mr. Arnodo-Mercado was charged in a Criminal Complaint with illegal reentry in violation of 8 U.S.C. § 1326. (ECF #1). I held an initial appearance on February 13, 2023, at which time the government moved for his detention. (Non-document entry of Feb. 13, 2023). In response, I noted: "Defendant is currently being held on an ICE detainer and reserves the right to revisit the issue of a detention hearing at a later time. The Court orders the Defendant to be held to answer further proceedings in the District Court." (ECF #6). Mr. Arnodo-Mercado requested a preliminary hearing, which I held on February 14, 2023 and determined that probable cause existed. (Non-document entry of Feb. 14, 2023). The matter was bound over to the grand jury for its further consideration.

On March 1, 2023, the grand jury returned a single-count indictment against Mr. Arnodo-Mercado for illegal reentry in violation of 8 U.S.C. § 1326. At his arraignment on March 3, 2023, he entered a plea of not guilty. (Non-document entry of March 3, 2023). The government again

1

moved for his detention, and he requested a detention hearing that I scheduled for March 10, 2023. (*Id.*) I ordered Mr. Arnodo-Mercado to remain in custody pending the detention hearing. (ECF #11).

The detention hearing proceeded as scheduled. (Non-document entry of March 10, 2023). At the conclusion of the hearing, I invited both parties to submit post-hearing briefs on the question of whether a person alleged to lack any basis for lawful presence in the United States, if released on conditions by the Court, would violate the standard provision of release that a defendant not commit a violation of Federal, state, or local law. Briefs were due on March 14, 2023, and I took my decision under advisement pending receipt of those submissions. (*Id.*). I also directed that Mr. Arnodo-Mercado remain in custody pending further proceedings. (*Id.*).

Both the government and Mr. Arnodo-Mercado submitted briefs by the deadline. (ECF #13, 14). As I noted during my oral ruling, the parties' briefs were comprehensive and helpful.

## Discussion

**I.    A defendant charged with illegal reentry, if released pending further proceedings, does not violate the standard release condition not to commit another violation of federal law.**

In its post-hearing brief, the United States argued that a person lacking a lawful presence in the United States, if released on bond, commits a *per se* violation of the conditions of bail. For support, it cited a single case: *United States v. Valadez-Lara*, No. 3:14-CR-204, 2015 WL 1456530 (N.D. Ohio March 30, 2015). There, the Court observed it could do nothing "to remedy Defendant's unlawful presence in this county nor can it ignore or absolve him of the inevitable violation of a condition of his release; thus Defendant's request for pre-trial release is denied." *Id.* at *8.

But my research failed to disclose any other courts reaching the same conclusion. In fact, since 1984, the United States Supreme Court has held that "[a]s a general rule, it is not a crime for a removable alien to remain present in the United States." *Arizona v. United States*, 567 U.S. 387, 407 (2012). Rather, "an alien who is illegally present in the United States . . . [commits] only a civil infraction." *United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 892 (S.D. Ohio 2016).

I also found numerous instances in which courts have released persons charged with the same offense as Mr. Arnodo-Mercado – even when, just like here, there is a suggestion that a court

order of release would result in ICE taking custody of the defendant and deporting him. I take particular note of the reasoning in *United States v. Ramirez-Rodriguez*, 453 F. Supp. 3d 1242 (D. Min. Apr. 13, 2020):

> The government suggests that the most likely outcome if Mr. Ramirez-Rodriguez is released from custody is that he will be promptly deported to Mexico, and therefore be unavailable for trial. The government suggests that, because a release Order would eventually result in his removal from the country, it would "allow Mr. Ramirez-Rodriguez to circumvent the criminal justice system and avoid punishment for his recidivist behavior." The Court finds this argument unpersuasive. Mr. Ramirez-Rodriguez would not be the one "circumventing" the criminal justice system; instead, the government itself would be preventing him from appearing in court by removing him from the country. This Court and many others have long declined to use the government's own decision to remove an alien during the pendency of his criminal prosecution to preclude release. "The problem here is not that the defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts…. This Court ought not run interference for the prosecuting arm of the government." *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111-12 (D. Minn. 2009). Put another way, "[t]he fact that ICE will not agree or cannot be trusted to delay deportation—that separate agencies within the Executive Branch do not communicate and cooperate—cannot serve to deprive a defendant of his rights under the Eighth Amendment and the Bail Reform Act." *United States v. Argueta-Espinoza*, Case No. 4:18MJ3133, 2018 WL 4492226, *2 (D. Neb. Sept. 19, 2018). **The simple fact that the government might choose to deport Mr. Ramirez-Rodriguez despite this Court's Order to release him cannot weigh against the defendant.**

*Id.* at 1251 (emphasis added, citation omitted). Other cases in which release has been considered (though not necessarily granted) for an individual charged with illegal reentry include *United States v. Reyes-Arguello*, 426 F. Supp. 3d 408 (E.D. Mich. 2019), *United States v. Diallo*, No. 20-20072, 2020 WL 3605290 (E.D. Mich. 2020), and *United States v. Valdez-Hurtado*, No. 22 CR 466, 2022 WL 16573567 (N.D. Ill. Nov. 1, 2022).

Therefore, I concluded that Mr. Arnodo-Mercado was entitled to an individualized determination under the Bail Reform Act.

**II. After applying the four factors of 18 U.S.C. § 3142(g), I concluded that Mr. Arnodo-Mercado was eligible for release on a combination of conditions.**

The government's argument for continued detention of Mr. Arnodo-Mercado was grounded solely on concerns as to risk of flight, and not on the basis that no condition or

combination of conditions would reasonably assure the safety of other persons or the community. (*See* ECF #15 at PageID 27) ( "It is clear from the evidence presented to this Court, that the government has proven by a preponderance of evidence that no condition or combination of conditions will reasonably assure Defendant's appearance at future court proceedings.").

  A. *Nature and circumstances of the offense charged*

As to the first statutory factor – the nature and circumstances of the offense charged, 18 U.S.C. § 3142(g)(1) – I reach the same conclusions as the court did in *United States v. Baltazar-Martinez*, No. 19-20439, 2019 WL 3068176 (E.D. Mich. July 12, 2019):

> Illegal re-entry does not constitute a crime of violence, a violation of section 1591, or a federal crime of terrorism. Nor does it involve a minor victim, controlled substances, firearms, explosives, or destructive devices. Baltazar-Martinez's crime is strictly related to his alleged illegal presence within the United States. **The crime of illegal re-entry, without more, simply does not have any bearing on whether Baltazar-Martinez is a serious flight risk.**

*Id.* at *2 (emphasis added).

Thus, the first statutory factor weighs in favor of release.

  B. *Weight of the evidence*

The second statutory factor is the weight of the evidence against the person. 18 U.S.C. § 3142(g)(2). "This factor goes to the weight of the evidence of dangerousness [or flight risk], not the weight of the defendant's guilt." *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010), *cert. denied*, 562 U.S. 978 (2010); *see also United States v. Homedes*, No. 5:22-CR-00033, 2022 WL 822153, at *6 (E.D. Ky. Mar. 18, 2022) (noting that the (g)(2) factor looks "only toward the weight of flight risk evidence, not toward the weight of proof of Defendant's guilt").

At the detention hearing, the government argued that Mr. Arnodo-Mercado was a flight risk because of the possibility that he will be removed by ICE and thus unavailable to appear for further proceedings in this case. It offered no documentary or testimonial evidence to support this proffer, though I credit the assertion, nonetheless. But I decline to find this argument controlling for the same reasons this Court rejected a similar assertion in *United States v. Avelarea-Padilla*, No. 3:18 CR 291, 2018 WL 8899334 (N.D. Ohio. Oct. 25, 2018):

> The Government first contends there are no conditions of release that will reasonably assure Defendant's presence because, upon his release, ICE will likely deport him before this case is resolved. The Government argues that whether

Defendant's non-appearance is voluntary is immaterial because the BRA does not contain a volitional requirement. Thus, the deportation allegedly makes Defendant a flight risk.

The Sixth Circuit has yet to address this issue. But for the reasons stated in *United States v. Veloz-Alonso*, 2018 WL 4940692, at *2-4 (N.D. Ohio 2018), *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336–39 (10th Cir. 2017), and *United States v. Santos-Flores*, 794 F.3d 1088, 1089–92 (9th Cir. 2015), as well as the additional authority cited in Defendant's Reply (Doc. 14 at 4-5), this Court finds the Government's position unpersuasive.

Briefly, the Government's interpretation of "flee" as used in the BRA "stretches English to the breaking point" and is inconsistent with the plain meaning of the word. *Veloz-Alonso*, 2018 WL 4940692, at *2. *See also United States v. Villatoro-Ventura*, 2018 WL 4376983, at *5 n.6 (N.D. Iowa 2018) (citing cases). Further, the Government's position would result in a *per se* rule barring deportable aliens from pretrial release. But "Congress chose not to exclude removable aliens from consideration for release" and instead set forth "specific procedures to be followed when a judicial officer determines that a defendant is not a citizen of the United States or lawfully admitted for permanent residence." *Ailon-Ailon*, 875 F.3d at 1338 (quoting *Santos-Flores*, 794 F.3d at 1090-91). *See also* 18 U.S.C. § 3142(d)(1)(B), (d)(2). Why include such procedures if deportable aliens were categorically excluded from the BRA's coverage? Notably, Congress also declined to include illegal reentry in Section 3142(e)(3), which lists specific crimes for which a rebuttable presumption of detention applies. In addition, the BRA is the more recent and more specific statute. Therefore, if there is a direct conflict between the BRA and the INA, the BRA controls.

Finally, as other courts have noted, "this statutory conflict only exists because two executive agencies will not cooperate." *Veloz-Alonso*, 2018 WL 4940692, at *3. *See also Ailon-Ailon*, 875 F.3d at 1339 ("In any event, to the extent any conflict exists, it is a matter for the Executive Branch to resolve internally.") . . . . Because the Government "has chosen to pursue criminal charges against this [D]efendant before this Court, this Court's authority to set him free under the BRA supplants the [G]overnment's ability to detain him under the INA." *United States v. Vasquez-Benitez*, 2018 U.S. Dist. LEXIS 165405, at *12 (D.D.C. 2018).

For all these reasons, the BRA controls whether a removable alien charged with illegal reentry should remain detained. Although the ICE detainer and reinstated order of removal may be relevant to the analysis, it is not dispositive. This Defendant, like all other defendants, is entitled to an individualized assessment of his eligibility for release under Section 3142(g).

*Id.* at *2-3.

5

I also concur with the court's observation in *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108 (D. Minn. 2009), cited in *United States v. Avelarea-Padilla*, that "[t]he problem here is not that defendant will absent himself from the jurisdiction, but that two Article II agencies will not coordinate their respective efforts. The Executive, in the person of the Attorney General, wishes to prosecute defendant. The same Executive, in the person of the Assistant Secretary of Homeland Security for ICE, may want to deport him. It is not appropriate for an Article III judge to resolve Executive Branch turf battles." *Id.* at 1111-12.

Thus, the second statutory factor weighs in favor of release.

C.  *The history and characteristics of the person*

Under the third statutory factor, I consider the history and characteristics of the person, including "(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3143(g)(3).

Because of Mr. Arnodo-Mercado's immigration status, the reports from Pretrial Services provided only limited information for me to evaluate on these considerations. Mr. Arnodo-Mercado's criminal history includes illegal entry or reentry charges in 2003 and twice in 2009. In 2006, 2007, and 2008, he was charged in several cases in Florida with not having a driver's license, domestic violence battery, disorderly intoxication, and contempt of court. None of these cases appear to have resulted in any convictions.

At the hearing, evidence was proffered that Mr. Arnodo-Mercado is a citizen of Honduras where he used to be a police officer and member of a drug task force, and was involved in several high-level drug arrests. This included matters involving corrupt police officers and at least one high-ranking general. Such evidence can reasonably support an inference that, if released, Mr. Arnodo-Mercado would be unlikely to flee the United States in order to return to Honduras out of concerns for his safety.

Of concern, Mr. Arnodo-Mercado has no family in Ohio, or any other ties to this judicial district. He was arrested following a traffic stop on the Ohio Turnpike. But during the preliminary

hearing on February 14, 2023, there was testimony that when stopped, he admitted to law enforcement that he was a Honduran citizen and was illegally present in the United States. There was no suggestion that he tried to conceal or obfuscate his identity or immigration status in any way. Like the defendant in *Baltazar-Martinez*, Mr. Arnodo-Mercado's "honesty supports his assertion that he will cooperate in the proceedings against him and does not wish to compromise any attempt to gain lawful entry into the United States in the future." 2019 WL 3068176 at *4.

The proposed third-party custodian testified that she and Mr. Arnodo-Mercado have been in a relationship for approximately 6 years. She has seven children, and Mr. Arnodo-Mercado helps her raise the three children who are still young and living at home including one who suffers from depression. She works two jobs and has a driver's license and a car, and can help get to required court appearances.

Thus, the third statutory factor, on balance, weighs in favor of release.

D. *The nature and seriousness of the danger to any person or the community that would be posed by the person's release.*

As noted above, the government did not argue that Mr. Mercado represented a serious danger to the community if released. I therefore found there is no evidence from which to conclude that Mr. Arnodo-Mercado poses any serious danger to any person or the community if he were released. Thus, the fourth statutory factor weighs in favor of release.

## Conclusion

For the foregoing reasons, I concluded that Mr. Arnodo-Mercado was eligible for release on a combination of conditions, including a $10,000 appearance bond, release to the proposed third-party custodian, a daily curfew, location monitoring, and other restrictions. I issued a written order outlining all of these conditions on March 22, 2023. (ECF #15).

Dated: March 24, 2023

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE